IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No.18-cv-00085-RPM

NATHAN M., a minor, by and through his parents and next friends, AMANDA M.,

    Plaintiffs,

v.

HARRISON SCHOOL DISTRICT NO. 2,

    Defendant.

_____

MEMORANDUM OPINION AND ORDER
_____

Invoking the jurisdiction provided by the Individuals With Disabilities Act (IDEA), 20 U.S.C. § 1415(i)(2)(A), Amanda M. asks this court to reverse the decision of an Administrative Law Judge (ALJ) permitting the defendant Harrison School District No. 2 ("District") to remove her son, Nathan, from Alpine Autism Center (Alpine) and place him at Otero Elementary School (Otero) pursuant to an individualized education program ("IEP") adopted on December 13, 2016.  Alpine is a private, non-profit center-based program providing services to students with autism spectrum disorder (ASD) using the principles of applied behavior analysis (ABA).  Nathan, born on May 13, 2006, was diagnosed with ASD before age 4.

In review of the Agency Decision this Court applies a "modified de novo" standard.  The statute at 20 U.S.C. § 1415(i)(2)(c) requires that the court (1) receive the record of the administrative proceedings; (2) hear additional evidence at the request of a party, and (3) base its decision on the preponderance of the evidence.  The

administrative record has been reviewed, including a transcript of the ALJ hearing testimony. The SCO decisions have also been read and a Report of Psychological Evaluation by Dr. Elizabeth F. Bruno, done at Parent's request in September, 2017, and signed on October 23, 2017. It was not before the ALJ in the hearings held beginning on October 2, 2016. The report has been considered as additional evidence.

From this record this Court makes the following findings by a preponderance of the evidence resulting in the conclusion that the Plaintiff has failed to prove that the December 13, 2016, FAPE did not comply with the requirements of the IDEA.

To comply with its statutory obligation to provide a FAPE the District placed Nathan at Alpine for kindergarten in 2012 and he has been in that program continuously since then. Three other District students have been there. In April, 2014, the District proposed changing placement for all four students in public schools as a result of IEP meetings with their parents. An IEP meeting is required to determine an appropriate FAPE. There are distinct procedural requirements for IEP meetings. Parents are to be active participants with District personnel with knowledge and experience with special education for disabled students.[1]

The parents of all four students objected and filed complaints with the Colorado Department of Education. Those complaints were referred to a State Complaint Officer (SCO) who determined that the District failed to obtain adequate information about the students because it predetermined the placements. As a result Nathan and the other students remained at Alpine.

---

[1] The statute sets requirements for the composition of an "IEP Team", 20 U.S.C. §1414(d)(1)(B).

In February, 2016, the District began the process of preparing a new IEP for Nathan. A pre-evaluation meeting was held on February 19, 2016, attended by Parent and her advocate, Crystal Morgan. Amy Lloyd, District Special Education Director, attended with school psychologist, Gregory Rossi, along with a social worker/mental health professional, a special education teacher, two speech language pathologists and the principal of the home school, Stratmoor Hills Elementary School. Parent presented her agenda and received assessment documents to be completed. The District conducted assessments which Parent attended and emailed questions to Rossi who provided answers with assistance from the assessment team members. No one from Alpine participated in the assessment process.

Pursuant to an advance notice a meeting was held on April 19, 2016, to discuss the assessment results. Parent and her advocate attended with Lloyd, Rossi and the other people from the District who were at the pre-evaluation meeting.

The District's psychoeducational evaluation and functional behavioral assessment were given to Parent. The latter was based on responses to questionnaires by Parent, Alpine teachers and formal observations by the District's evaluation team.

A Determination of Eligibility for special education services was signed by the team members. Parent and her advocate were at this meeting. There was no Alpine teacher in attendance because no invitation had been made by Parent or the District. At some time after this meeting Parent met with Rossi to get more information about the assessment protocols and results which Rossi provided.

3

Nathan was diagnosed with ADHD in 2012. That was not included in the assessments or in the IEP meetings discussions because Parent had not told the District about the ADHD diagnosis and it was not in the information from Alpine.

The first scheduled meeting to develop a new IEP based on the evaluation was held on May 19, 2016. Parent attended with two advocates and presented a detailed agenda to discuss her concerns about the assessments and a need for more meetings. The District's representatives were the same as before. A facilitator was present to moderate the proceedings. Alpine was invited but no one from it was available to attend.

Parent was not satisfied that all of her questions had been answered and wanted more meetings.

The next IEP meeting was held on September 9, 2016. In the interval between meetings Rossi was replaced by Dr. Sabrina Jack, another school psychologist who was briefed by Rossi. Dr. Jack observed Nathan at Alpine in June and she read quarterly reports about Nathan from Alpine as well as the evaluation report. Rhonda Berry replaced the former facilitator because Parent was concerned that she was a District employee and may have been biased. Both parents attended with two advocates. Dr. Jack, Lloyd and the other District representatives were there. Two teachers from Alpine attended. Cara Krzemien, Nathan's lead teacher, was one of them. The meeting lasted over two hours.

A separate meeting was held on September 19, 2016, at Parent's request made at the September 9 meetings to obtain more information about the protocols used in the evaluations. This was not an IEP meeting. The District was represented by Dr. Jack,

4

Terran Allen, a speech pathologist, and Nancy Morin, an occupational therapist. Some three hours were spent answering Parent's questions.

The next IEP meeting was held on November 11, 2016, pursuant to notice dated November 7. On November 8 Parent sent an email saying that all of her questions had not been answered on September 19 and submitting additional questions to be answered before the IEP meeting. Both Jack and Allen provided written responses on November 9.

The November 11 meeting was facilitated by Berry and attended by Parent and two advocates; two representatives from Alpine; and, from the District, Lloyd, Jack, a general education teacher, a special education teacher, a speech language pathologist, an occupational therapist, two representatives from the transportation department, and the principal of Stratmoor Hills Elementary. Parent submitted a lengthy updated agenda expressing numerous detailed concerns and complaints that her questions and requests for information had not been fully answered, and requesting additional information.

Lloyd testified that this meeting lasted around three hours, during which Parent and her advocates were fully allowed to participate, their questions were answered, and they were affirmatively asked for input.

The team began a discussion of the goals to be included in Nathan's IEP, beginning with draft goals that had been prepared by some District IEP team members earlier in 2016 and that were sent out to Parent and Alpine in advance of the meeting. Alpine provided additional information on some of the goals reflecting that Nathan had progressed in some areas, and the team agreed that because of changes in Nathan's

baseline since the previous spring, Alpine and District members would provide new information and some of the goals would be updated.

Parent testified to her frustration that the baseline information used to prepare the draft goals was outdated, and that she had to forcefully urge the District team members to revise them to make them appropriate for Nathan's current needs.

Berry, the facilitator, testified that emotions were higher at this meeting, including Parent crying and her advocate raising her voice, but that IEP team members from the District remained calm and compassionate.

Parent and her advocate also requested an Independent Educational Evaluation (IEE) near the conclusion of this meeting, expressing concerns that the reevaluation conducted by the District earlier in 2016 was incomplete and inadequate.

On December 5, 2016, occupational therapist Morin, speech pathologist Allen, and psychologist Dr. Jack went to Alpine to observe Nathan pursuant to the decision at the November 11 IEP meeting to update their information on his current status. In addition to observing Nathan, Morin obtained work samples from Alpine staff. Dr. Jack shared the results of her observations with Parent on December 13, 2016. Morin's and Allen's observations were used to update Nathan's motor and language goals as stated in the updated IEP at the next meeting.

The next IEP meeting was scheduled for December 13, 2016. On December 12 2016, Parent sent two emails to the District team members expressing her concerns that she was not able to provide adequate input because the answers to her questions were incomplete and she added new questions for each team member to answer.

A four-hour IEP meeting was held on December 13, 2016, with Berry as facilitator. Parent was there with her two advocates. Alpine had two representatives in attendance with all of the District team members. After discussion of Nathan's status and needs the District team proposed that Nathan be placed in an autism program at Otero Elementary School and also be allowed to access a program called Communications and Social Development (CSD) if needed to achieve behavioral and socialization goals. Parent, her advocates and the Alpine representatives asked that he remain at Alpine. The District team explained that at Otero Nathan would be given academic instruction at a higher level and be able to associate with non-disabled students. The school's location being much closer to home would eliminate the long bus ride that was required to go to Alpine.

The District's proposal was embodied in a written IEP and a Behavioral Intervention Plan (BIP) with a written notice, all dated December 13, 2016.

Parent signed the plan with her written rejection of the IEP on that day.

This December 13, 2016, IEP is the subject of this litigation.

The District prepared to go forward with the December 13, 2016, IEP sending a notice to the Parent on January 6, 2017, that a meeting would be held at Otero on January 17 at noon to begin planning for the transfer from Alpine to Otero. A reminder was sent on January 13, 2017. On the morning of the scheduled meeting Parent sent an email to Lloyd saying the notice did not give the address of Otero, that she thought it was to be another IEP meeting and that she could not attend. Lloyd had sent Parent copies of the IEP, BIP and Prior Written Notice (PWN) on December 14, 2016, with a

formal offer of FAPE and an explanation of parent rights. Parent acknowledged receipt of these documents on January 10, 2017, repeating her view that the IEP was not appropriate for Nathan and that she had rejected it at the meeting on December 13, 2016. The transition meeting was held without the Parent present.

Parent filed a complaint with the Colorado Department of Education on February 10, 2017, resulting in an SCO decision on April 11, 2017, concluding that the District failed to develop the IEP in accordance with the procedural requirements of IDEA and failed to develop an IEP according to the unique needs of a child with a disability including appropriate positive behavioral interventions and support. The SCO ordered public funding at the private school. The SCO also ordered the District to provide an individual educational evaluation (IEE) of Nathan and to convene a new IEP meeting after completion of the IEE.

The District filed a due process complaint challenging the SCO decision asserting that the December, 2016, IEP offered Nathan a FAPE. Parent filed a cross-complaint asserting procedural violations of the IDEA.

A due process hearing was held on October 2-6, 2017, by an ALJ assigned by the Colorado Office of Administrative Courts pursuant to a contract with the Colorado Department of Education. In that adversary proceeding the Parent was represented by her advocate and the District was represented by counsel. After hearing extensive evidence the ALJ issued the Agency Decision on October 25, 2017, concluding as follows:

The ALJ concludes that the District met its burden of establishing that the December 13, 2016 IEP represented an offer of FAPE to the Student as required under the Individuals with Disabilities Education Act. Respondents failed to meet their burden of establishing that the Student was denied FAPE as a result of procedural violations alleged in the development of the IEP. Finally, the Respondents failed to demonstrate that the Student lost instructional time as a result of the District's failure to implement his transportation plan.

Parent filed this civil action to review that Agency decision and reverse it, requiring the District to maintain Nathan's educational placement at Alpine. The ALJ did not consider the SCO rulings, limiting his findings to the evidence presented during the hearing. He placed the burden of persuasion on the District to prove by that evidence that the December 13, 2016, IEP together with an incorporated behavioral intervention plan offered a FAPE to Nathan.

In this proceeding the Parent on behalf of Nathan must prove by a preponderance of the evidence that the reverse is true.

The seminal case construing the IDEA is *Bd. of Ed. of Hendrick Hudson Central Sch. Dist., Westchester Cty. v. Rowley,* 458 U.S. 176 (1982). There the Court held that the statute gave a substantive right to a "free appropriate public education" for certain children with disabilities but did not set a standard for measuring the educational benefits that must be provided. That the Court did in *Endrew F. v. Douglas County School District RE-1I,* 137 S.Ct. 988 (2017). An IEP is adequate if it offers a program "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." The Court gave the following cautions concerning the role of a court exercising IDEA jurisdiction:

> We will not attempt to elaborate on what "appropriate" progress will

look like from case to case. It is in the nature of the Act and the standard we adopt to resist such an effort: The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created. This absence of a bright-line rule, however, should not be mistaken for "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley,* 458 U.S., at 206, 102 S.Ct. 3034.

At the same time, deference is based on the application of expertise and the exercise of judgment by school authorities. The Act vests these officials with responsibility for decisions of critical importance to the life of a disabled child. The nature of the IEP process, from the initial consultation through state administrative proceedings, ensures that parents and school representatives will fully air their respective opinions on the degree of progress a child's IEP should pursue. See § § 1414, 1415; *id*., at 208-209, 102 S.Ct. 3034. By the time any dispute reaches court, school authorities will have had a complete opportunity to bring their expertise and judgment to bear on areas of disagreement. A reviewing court may fairly expect those authorities to be able to offer a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances.

*Id. at 1002.*

The ALJ applied that standard, citing to *Endrew* at page 20 of the Agency Decision. He made a careful comparison between Alpine and Otero that is supported by the record. The emphasis at Alpine has been on behavioral intervention. Nathan has significant behavioral patterns that obstruct his ability to learn, including a short attention span, frequent distraction, physical resistance and aggression. Parent has legitimate concerns as to the adequacy of the District's functional behavioral assessment and the ability of the staff at Otero to intervene and re-direct negative behaviors. The deficiency at Alpine is in learning instruction. There are no certified teachers on the Alpine staff and Nathan has made little academic progress, particularly in writing. The other deficiency is that there is no opportunity for him to interact with

10

children making normal progress.

A specific requirement of the IDEA is that:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.
>
> 20 U.S.C. § 1412(a)(5)(A).

That is the prime difference between Alpine and Otero. There are no non-disabled children among the 27 or so children at Alpine. At Otero Nathan would have the opportunity to participate with non-disabled students at lunch, music, art and extracurricular activities as well as in science and social studies. The science may particularly be appropriate to Nathan's interest as identified by Parent.

It may be that Otero will not be able to achieve the goals it has set out in the IEP. In that case a different IEP must be developed. The transition will be difficult. The District has planned that this transition be incremental with some time in both schools. It may also be expected that a new environment will have a positive effect opening Nathan to new experiences. What the law requires is that an IEP provide a reasonable plan to provide educational opportunity in a least restrictive environment. This the District did.

Parent also argues that the District failed to meet IDEA's procedural requirements because it predetermined the outcome of the 2016 IEP process. The record does not support this argument, rather showing that Parent was afforded a

meaningful opportunity to participate in the IEP process and the District listened and responded to her input.

It is

ORDERED, that judgment shall enter for the defendant District, dismissing this civil action with an award of costs.

Dated: December 12, 2018

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge